# Doyle *versus* Commonwealth *ex rel.* Davis.

1. One court cannot modify, disregard or set aside the judgment of another court of co-ordinate jurisdiction.

2. A sentence for contempt, upon which an attachment has issued, is a judgment within the above stated principle.

3. However erroneous such judgment or sentence may appear to be, it is binding upon courts of co-ordinate jurisdiction until vacated or reversed by due process of law.

4. Upon the hearing of a writ of habeas corpus, issued by the Court of Common Pleas of Warren county, it appeared that the relator had been arrested in Warren county by a deputy sheriff of Allegheny county, by virtue of a writ of attachment for contempt issued by the Common Pleas of Allegheny county. It further appeared that the contempt for which the attachment issued consisted in acts done by the relator in his official capacity as receiver appointed by the Common Pleas of Forest county, and in accordance with an order of said court. Upon this ground the Common Pleas of Warren county entered an order discharging the prisoner from custody. Upon certiorari to the Supreme Court:

*Held*, that the sentence for contempt by the Common Pleas of Allegheny county was a judgment of said court which, however erroneous it might be, was, until vacated or reversed, binding upon the Common Pleas of Warren county; and that the latter court therefore erred in discharging the prisoner upon habeas corpus, such action being in effect equivalent to setting aside the said judgment and attachment of a court of co-ordinate jurisdiction.

5. An order, in habeas corpus, discharging the relator from the custody of a deputy sheriff, is a final order or decree, which will entitle such officer to remove the proceedings to the Supreme Court for review upon writ of certiorari.

[Doyle v. Commonwealth.]

May 26, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

CERTIORARI to the Court of Common Pleas of *Warren county:* Of January Term, 1884, No. 40.

The records showed the following proceedings:—Habeas corpus, awarded by said court, upon the petition of S. V. Davis, directed to John Doyle and the sheriff of Warren county directing them to have the body of said relator before the court forthwith. John Doyle, deputy sheriff of Allegheny county, made return that he had arrested said Davis by virtue of a certain writ of attachment issued by the Court of Common Pleas No. 1 of Allegheny county, a copy of which was attached to his return; and he produced the body as commanded. The said writ of attachment recited that S. V. Davis had been adjudged guilty of contempt by said court of Common Pleas No 1 of Allegheny county, in a certain cause therein depending, and commanded the sheriff of Allegheny county to "attach the said S. V. Davis wherever he may be found within the said Commonwealth, so as to have him before the said court forthwith, there to answer," &c. The proceedings upon which the said attachment was founded are recited in the opinion of this court.

The court (BROWN, P. J.) entered the followed decree:— "And now, September 12, 1883, upon hearing, and it appearing that the contempt alleged to have been committed by said Davis, and for which the attachment issued, consisted in acts done by said Davis as receiver, appointed by the Court of Common Pleas of Forest county, and in accordance with the order of said court and acts done within the county of Forest, the said Davis is discharged from custody."

John Doyle thereupon took this writ of certiorari, assigning for error the above decree. The defendant in error moved to quash the writ.

*R. A. Balph* (with him *D. T. Watson, Ball & Thompson* and *John Dalzell*) for the plaintiff in error. A decree in habeas corpus, remanding the relator to custody is not final, but a decree discharging him from custody is final, and the only redress of the officer is by removing the record to this court for review. The jurisdiction in such case is clear under the general appellate power of this court, and it is also within the express statutory powers conferred by the Act of June 16, 1836, which are to be liberally construed: Beale *v.* Commonwealth, 25 Pa. St., 22; Commonwealth *v.* Judges, 3 Binn., 273; Erie Bank *v.* Brawley, 8 Watts, 530; Halsey *v.* Trevillo, 6 Watts, 402.

The prisoner being in custody under the writ of attachment

[Doyle *v.* Commonwealth.]

issued upon the judgment of a court whose jurisdiction was not questioned, another court of co-ordinate jurisdiction had no power to discharge him, upon the ground that said judgment or attachment was erroneous. A judgment or sentence for contempt of court, where the court had jurisdiction of the defendant and of the subject matter, like any other judgment of the court, cannot be attacked collaterally; it can only be reviewed by the court that pronounced it, or by the superior court; it is binding and final upon all other courts: Passmore Williamson's case, 2 Casey, 9; Commonwealth *v.* Lecky, 1 Watts, 66; Respublica *v.* Gaoler, 2 Yeates, 349.

*J. M. Stoner* (*S. P. Johnston* and *A. B. Force* with him), for the defendant in error.—Neither in England nor in the United States is an order of a court upon a writ of habeas corpus the subject of writ of error, certiorari or appeal, unless by express statutory provision. Hurd on Habeas Corpus, book II., chap. 11. There is no such express statute in this state; the general Act of 1836, defining the powers of this court, provide that it shall hear and determine causes removed from the lower courts "in the manner now practised and allowed." The Act of May 22, 1722, § 13, prescribed that the Supreme Court should exercise the jurisdiction and powers thereby granted as fully as the justices of the Courts of Kings Bench, Common Pleas and Exchequer at Westminster, or any of them, can or may do." In Russell *v.* Commonwealth, 1 Penr. & Watts, 82, it was held that an order of the Common Pleas discharging a prisoner upon habeas corpus was not the subject of review by writ of error, and such writ was quashed. The reason is not only because the order is not a final judgment or decree, but because the facts on which it is based are often established by oral testimony, and are not usually made matter of record. Commonwealth *v.* Crans, 2 Clark's Cases, 441. For this reason the writ of certiorari, which brings up only the record, is even less appropriate than a writ of error, and the writ in this case should be quashed: Commonwealth *v.* Kryder, 1 Pennypacker, 143; Howe *v.* State of Mo., 9 Mo. Rep., 690; Bell *v.* State of Md., 4 Gill, 304; Ex parte Mitchell 1 Lous. Ann., 413; Wade *v.* Judge, 5 Ala., 130; In Re Perkins, 2 Cal., 424.

Upon the merits, there are several grounds upon which the action of the court below is sustainable. The relator was arrested in Warren county, by a deputy sheriff of Allegheny county. The power of the court of Warren county to award a writ of habeas corpus in such case cannot be questioned. The return showed that he was held under a writ of attachment, issued by an ex-territorial court, which, upon its face, did not show that it had been issued according to the forms

[Doyle v. Commonwealth.]

of law, as prescribed in Commonwealth v. Snowden, 1 Brewster, 218; Commonwealth v. Newton, 1 Grant, 453. In order to enforce imprisonment under summary conviction, the warrant must be self-sustaining as to jurisdictional requisites. Not only were these absent in this case, but it was shown to the court that the relator was not a party to the cause in which the attachment was issued, but had only been served with a rule to show cause. It is settled that the power of summary conviction for contempt does not exist as to persons not actual parties to the controversy. Allegheny Bank's Appeal, 12 Wr., 328. Further, it was shown that the act alleged to be a contempt was committed out of the jurisdiction of the court of Allegheny county, and that the relator acted therein not in his individual capacity, but as receiver appointed by the Common Pleas of Forest county, and in obedience to the mandate of that court. Had he failed to act as he did, he would have been in contempt of the latter court, and can it be argued that by so acting a foreign court can usurp jurisdiction by sending its officer out of its own county to arrest and carry off the officer of another court without power by the court of the county where he is arrested to protect him? The decree of the Forest county court, appointing the receiver, and directing him to do the act, was at least equally binding on the Warren county court, as was the decree of contempt and the attachment based thereon, of the Allegheny county court. A sheriff's jurisdiction is limited to his own county, except in a few cases especially excepted by Acts of Assembly, and the Contempt Act of June 16, 1836, is not one of these; it does not extend either the power of the court or its officers. If a sheriff, under a writ directed to him, make an arrest out of his own county (except when in fresh pursuit after an escape from his own county) he is a trespasser, and the arrest is void: Avery v. Seely, 3 W. & S., 494; Chase v. Joyce, 4 M. & S., 414; Hammond v. Taylor, 3 B. & A. 408; Commonwealth v. Jailer, 1 Grant, 218; Dan. Ch. Pr., 5th ed., 463.

Mr. Justice STERRETT delivered the opinion of the Court, October 6, 1884.

This contention appears to be the offspring of a jurisdictional conflict between the Court of Common Pleas No. 1 of Allegheny county, and the Court of Common Pleas of Forest county. The subject of controversy between those courts is not now directly before us, but, as explanatory of the present case, a brief reference to some of the facts and circumstances, common to both, may not be amiss.

The relator, S. V. Davis, was appointed receiver by the Court of Common Pleas of Forest county in a partition pro-

ceeding, pending in that court, between George S. Lacey and wife and the executors of Sarah H. Ford; and in the equity proceeding, pending in the Court of Common Pleas No. 1 of Allegheny county, for the settlement of alleged partnership transactions between the same parties, Samuel Lewis was appointed receiver. A petition was presented by Lewis to the last mentioned court, setting forth, *inter alia,* that in the discharge of his duties as receiver he was unlawfully obstructed by S. V. Davis and others, and invoking the aid of the court in the premises. An answer to this petition having been filed by Davis, the matter was so proceeded in that, on the 29th of June, 1883, Davis was adjudged guilty of contempt of court in disobeying its decree, theretofore made in the case, and an attachment against him was accordingly awarded. As appears by the return to the attachment, Davis, after being arrested thereon, was forcibly rescued from the custody of the sheriff's deputy. An alias attachment was thereupon awarded by the court, placed in the hands of plaintiff in error, a deputy of the sheriff of Allegheny county, and by virtue thereof Davis was again arrested in Warren county. While thus in the custody of the officer he procured the writ of habeas corpus, returnable forthwith before the judges of the Court of Common Pleas of that county. To the writ of habeas corpus the plaintiff in error made return that " by virtue of a writ of attachment, dated September 8, 1883, issued out of the Court of Common Pleas of Allegheny county (a copy of which is attached), I have arrested S. V. Davis and have him now," etc. The writ of attachment, a copy of which was thus appended to the return, is in due form, reciting that " one S. V. Davis, on the 29th day of June, 1883, was adjudged guilty of contempt by our judges of the Court of Common Pleas No. 1 in and for said county, in the cause therein depending, wherein Henry P. Ford and James Balph, executors, &c., are plaintiffs, and Caroline M. Lacey and others are defendants, at No. 205 December Term, 1881, in equity, in disobeying the decree of said court heretofore made in said case," and commanding the sheriff of Allegheny county to attach him " wherever he may be found within the said Commonwealth, so as to have him before said court forthwith, there to answer to us, as well touching the contempt which he hath committed against us as touching such things as shall there be laid to his charge," &c.

It is scarcely necessary to say that the return, embodying the writ of attachment, fully exhibited the authority of plaintiff in error to arrest the relator anywhere within the Commonwealth and take him before the Court of Common Pleas of Allegheny county; but, notwithstanding this uncontradicted return, Davis was unconditionally discharged. There was no

[Doyle *v.* Commonwealth.]

question as to his identity. It was conceded he was the person who, after hearing, had been adjudged guilty of contempt, and against whom the alias attachment was issued. The only ground upon which it is claimed the Common Pleas of Warren county acted is that stated in the order discharging the relator, of which the following is a copy, viz.: "Upon hearing, and it appearing that the contempt alleged to have been committed by said Davis, and for which the attachment issued consisted in acts done by said Davis as receiver, appointed by the Court of Common Pleas of Forest county, and in accordance with the order of said court, and acts done within the county of Forest, the said Davis is discharged from custody."

It is very evident that this is substantially a review and reversal of the judgment on which the writ of attachment was based; and the question is, whether one court can modify or set aside the judgment of another court of co-ordinate jurisdiction. If it can, the most deplorable consequences would likely ensue; but we have no hesitation in saying that no such power exists. In Passmore Williamson's case, 2 Casey, 9, the question, in all its bearings, was elaborately discussed and settled. It was there held that "upon a habeas corpus the judgment of even a subordinate court, having jurisdiction of the subject matter, cannot be reviewed in this court; that such judgment however erroneous must be taken as legal and valid until reversed on writ of error or appeal. This court will only look at the record to see whether a judgment exists, and has no power to say whether it is right or wrong. It is conclusively presumed to be right until it is regularly brought up for revision." In the same case it is said: "A sentence for contempt is not essentially different from any other judgment, decree or sentence. It is a matter adjudicated, and it belongs to the very essence of governmental order that it cannot be reviewed except by the court that pronounced it, or by its official superiors." The court below was clearly in error in undertaking to review the judgment of the Court of Common Pleas No. 1 of Allegheny county, and, in effect, pronouncing it erronoeus. It appeared, as we have seen by the return of plaintiff in error, that the relator had been adjudged guilty of contempt, by a court having jurisdiction of the subject matter, for disobeying its decree theretofore made in an equity proceeding, and that he was then under arrest on a process issued in due form in pursuance of the judgment. When these facts were shown, as they were, and not controverted, the learned judge should have refused to interfere with the execution of the process, even though he was satisfied the judgment on which it was based was erroneous.

It has been suggested that an order such as that complained

[Grandin *v.* Insurance Co.]

of in this case is not reviewable on *certiorari* or writ of error, but we are of a different opinion. The order discharging the relator from custody is essentially final, and the officer in whose custody he was, has no redress except by removal of the proceedings to this court for revision. The Act of June 16, 1836, empowers this court to hear and determine all and all manner of pleas, plaints and causes which shall be brought here from any other court of this Commonwealth by virtue of any writ or process issued by the court or any judge thereof for that purpose, in the manner then practiced and allowed ; to examine and correct all and all manner of errors of the justices, magistrates and courts of this Commonwealth, in the process, proceedings, judgments and decrees, as well in criminal as in civil pleas or proceedings, and thereupon to reverse, modify or affirm such judgments, decrees or proceedings as the law doth or shall direct. The jurisdiction and powers thus conferred are sufficiently comprehensive to embrace the present case. We are also of opinion that the officer from whose custody the relator was improperly discharged is the proper person to sue out the writ. This point was in effect ruled in Holsey *v.* Trevillo, 6 Watts, 402.

> The assignments of error are sustained, and the order thereon complained of is reversed and set aside.

Gordon and Trunkey, JJ., dissented.