414 A.2d 1043

**COMMONWEALTH of Pennsylvania**

v.

**Terry L. HESS, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 18, 1979.

Decided May 30, 1980.

582

Richard A. Sprague, Pamela W. Higgins, Philadelphia, for appellant.

Joseph C. Madenspacher, Asst. Dist. Atty., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO, LARSEN and FLAHERTY, JJ.

OPINION

NIX, Justice.*

On April 29, 1976, a criminal complaint was issued in Lancaster County charging Terry L. Hess with perjury. The perjury was alleged to have occurred during testimony of Mr. Hess in the case of *Commonwealth v. Haefner*,[1] Nos. 3218–20 of 1975, also occurring in Lancaster County. This first complaint was quashed by order of the Court of Common Pleas of Lancaster County because of a substantive defect. A second complaint charging the same crime was voluntarily withdrawn by the District Attorney. A third complaint was filed, again charging the same crime, and a preliminary hearing was held thereon on August 27, 1976 before a district justice, following which appellant Hess was held for court.

On August 31, 1976, four days after the preliminary hearing, an information was filed by the District Attorney charging Hess with perjury. Thereafter, on September 10, 1976 among other pre-trial motions, a Petition to Quash Information, Return of Transcript, Complaint and to Declare Preliminary Hearing Null and Void was filed on Mr. Hess' behalf. Following the submission of briefs and argument by the parties, a judge of the Court of Common Pleas on November 24, 1976 dismissed the petition. The basis of the dismissal was that one admitted to bail cannot be heard to complain of the inadequacies of the evidence offered during the preliminary hearing. Further, the Court of Common Pleas denied appellant's request to certify the matter for appeal pursuant to the Appellate Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, Art. V, § 501(b), formerly found at 17 P.S. § 211.501(b). Appellant filed an appeal to the Superior Court challenging the November 24 order. The District Attorney filed a motion to quash the appeal, contending that the November 24 order was interlocutory and not appealable. The Superior Court subsequently certified

* This case was reassigned to the writer on November 9, 1979.

1. 473 Pa. 154, 373 A.2d 1094 (1977).

the appeal to this Court for consideration and determination. Implicit in the Superior Court's certification was its uncertainty as to the proper disposition of the motion to quash.

The underlying question raised in this appeal is the feasibility of permitting the trial process to be interpreted for the purpose of providing immediate review of the denial of a claim of the nature raised herein. The answer to this question will turn upon the nature of the right being asserted. *See, e. g., Commonwealth v. Bolden,* 472 Pa. 602, 373 A.2d 90 (1977). Complexity is added to the issue presented by virtue of the Common Pleas Court's refusal to address the merits of the question presented to it. If we were to limit our conclusion to the view that consideration at this juncture was inappropriate for a reason other than that decided by the court below, then we would leave unanswered whether the initial request for consideration before the Court of Common Pleas was properly refused. In view of the apparent uncertainty in this area and its importance to our jurisprudence, we will attempt to answer both questions, to wit: whether appellant is entitled to review at either or both levels. An additional reason for examining the validity of the lower court's conclusion, i. e., the underlying merit of the claim raised by appellant was not cognizable at that stage, is that if correct it would necessarily follow that there would also be no right of appellate review of the question.

■■ A proper analysis of the questions presented requires that we first discern the true nature of the claim appellant was attempting to raise. In styling the appellation of the motion, appellant elected to set forth various types of relief he sought. He was requesting that the information be quashed and that the complaint and transcript be returned to the appropriate body, who would be empowered to overrule the district justice's finding of a prima facie case. The reason offered as his basis for this relief was the assertion that the Commonwealth had failed to prove a prima facie case at the preliminary hearing. Since the court's right to exercise jurisdiction over the person of the accused in a criminal case is dependent upon

the Commonwealth's ability to establish a prima facie case, *see Commonwealth v. Prado*, 481 Pa. 485, 393 A.2d 8, 10 (1978) (citing cases), appellant was in fact asserting an unlawful detention. Thus, regardless of the designation used by appellant, the true nature of the motion was a request for habeas corpus relief. Our precedent establishes that we will not dismiss a request for habeas corpus relief solely on the basis that the pleading raising the claim was incorrectly labeled, where the purport of the motion is evident. *Commonwealth v. Hetherington*, 460 Pa. 17, 331 A.2d 205 (1975).

The great writ of *habeas corpus ad subjiciendum* was designed to test the legality of the restraints upon an accused's liberty. The Habeas Corpus Act of 1785 [2] is entitled "[a]n Act for the better securing personal liberty, and preventing wrongful imprisonments." Its preamble states that "personal liberty is a principal blessing derived from free constitutions of government, and certain methods of proceeding should be prescribed, so that all wrongful restraints thereof may be easily and speedily redressed." The right to the protections afforded by this writ have long been part of our Commonwealth's history. Our state constitution has provided that "the privilege of the writ of habeas corpus shall not be suspended, unless when in case of rebellion or invasion the public safety may require it." Pa.Const., art. 1, § 14. Blackstone said of this remedy: "The great and efficacious writ, in all manner of illegal confinement, is that of *habeas corpus ad subjiciendum* ; directed to the person detaining another, and commanding him to produce the body of the prisoner, with the day and cause of his caption and detention." 3 W. Blackstone, Commentaries *131. In discussing the federal constitution's habeas corpus provision, *see* U.S.Const., Art. 1, § 9, the Supreme Court has stated:

> We do well to bear in mind the extraordinary prestige of the Great Writ, *habeas corpus ad subjiciendum*, in

2. Act of February 18, 1785, 2 Smith's Laws 275, §§ 1 *et seq.*; as amended, 12 P.S. §§ 1871 *et seq.* (1967); repealed by J.A.R.A. effective June 27, 1978, recodified at 42 Pa.C.S.A. §§ 6501 *et seq.* (1979 Pamphlet).

Anglo-American jurisprudence * * * Received into our own law in the colonial period, given explicit recognition in the Federal Constitution, Art. I, § 9, cl. 2, incorporated in the first grant of federal court jurisdiction, Act of September 24, 1789, * * * habeas corpus was early confirmed by Chief Justice John Marshall to be a "great constitutional privilege." * * * Although in form the Great Writ is simply a mode of procedure, its history is inextricably intertwined with the growth of fundamental rights of personal liberty. For its function has been to provide a prompt and efficacious remedy for whatever society deems to be intolerable restraints. Its root principle is that in a civilized society, government must always be accountable to the judiciary for a man's imprisonment: if the imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release. * * * History refutes the notion that until recently the writ was available only in a very narrow class of lawless imprisonments. For example, it is not true that at common law habeas corpus was exclusively designed as a remedy for executive detentions; it was early used by the great common-law courts to effect the release of persons detained by order of inferior courts. * * * Nor is it true that at common law habeas corpus was available only to inquire into jurisdiction, in a narrow sense, of the committing court. *Fay v. Noia*, 372 U.S. 391, 401–02, 83 S.Ct. 822, 827–830, 9 L.Ed.2d 837 (1963).

In addition to the deference this mode of procedure has traditionally enjoyed, it is also germane to consider the purpose of the preliminary hearing in the criminal trial process.

The primary reason for the preliminary hearing is to protect an individual's right against unlawful arrest and detention. It seeks to prevent a person from being imprisoned or required to enter bail for a crime which was never committed, or for a crime with which there is no evidence of his connection. . . .

*Commonwealth ex rel. Maisenhelder v. Rundel*, 414 Pa. 11, 15, 198 A.2d 565, 567 (1964). *See also Commonwealth v. Hetherington, supra,* 460 Pa. at 21–22, 331 A.2d at 208.

■ In refusing to reach the merits of appellant's claim that the Commonwealth had failed to establish a prima facie case, the lower court relied upon some of the earlier case law in this jurisdiction. At one point, it was maintained that an accused who is admitted to bail is not under sufficient state "custody" as to warrant immediate review of the justification for the restraint imposed. *Commonwealth v. Weinstein*, 177 Pa.Super. 1, 109 A.2d 235 (1954). The *Weinstein* view has since been expressly rejected. In *Commonwealth ex rel. Paulinski v. Isaac*, 483 Pa. 467, 397 A.2d 760 (1979) this Court pointed out that the refusal to permit the use of this procedure simply because appellant was in a bail status would result "in placing central emphasis on the history of the writ rather than upon its suitable employment in maintaining the balance 'nice, clear and true between the state and the accused.' " *Id.,* 483 Pa. at 472, 397 A.2d at 763. The restraints on an accused bound over for court and released on bail are sufficient to satisfy the custody requirement of a habeas corpus petition. *Commonwealth ex rel Paulinski v. Isaac, supra,* 483 Pa. at 472–473 & n. 2, 397 A.2d at 763, 764 & n. 2. Thus, the reason offered by the court below in justification of its refusal to reach the merits of appellant's complaint has been rejected by this Court and we now reaffirm the position set forth in *Commonwealth ex rel. Paulinski v. Isaac, supra.* However, we note that the decision of the trial court was filed on November 24, 1976 and that our decision in *Isaac* was handed down on January 24, 1979. Thus, the ruling of the lower court at the time it was made was in accordance with the then prevailing law. *See Commonwealth v. Weinstein, supra.* Although this fact may justify the court's action, it does not provide a basis for concluding that appellant is not now entitled to appellate review.[3]

3. Thus, our disposition of this case does not create any injustice to the appellant for two reasons. First, the common pleas court applied

■ The Commonwealth also offers as a basis for the refusal of the Common Pleas Court to consider the merits that any error at the preliminary hearing was cured by the filing of an information. This argument is premised upon the assumption that for these purposes there is no difference between the indictment process and the information process. The rationale for the rule that a defendant could not look behind an indictment to a prior irregularity during the preliminary stage, where the irregularity asserted was the insufficiency of the evidence presented at the preliminary hearing, was that theoretically the indictment provided an independent judicial judgment (as opposed to the judgment of a law enforcement agency) on the sufficiency of the evidence. Since the preliminary hearing was designed to provide the same protection, it was deemed that no harm was suffered even if the evidence was insufficient at the preliminary hearing, if the evidence before the grand jury was found to support a true bill. *Commonwealth v. Weinstein, supra,* 177 Pa.Super. at 2, 109 A.2d 235 (citing cases); *see also Commonwealth v. Manni,* 223 Pa.Super. 403, 405, 302 A.2d 374 (1973).

Whereas the former rule, at least in theory, may have had some legitimacy, it is obvious that the information procedure that has now been substituted for the indictment process cannot in any way be considered a second *judicial* determination of the quantum of the evidence available to require an accused to stand trial. We, therefore, also reject this argument as a basis for finding that the Court of Common Pleas could properly refuse to consider the merits of appellant's claim.[4]

■ In considering whether or not appellant may immediately appeal the dismissal of his claim to habeas corpus

the correct law at that time. Second, immediate appellate review of a denial of habeas corpus relief has traditionally been denied.

4. Under Pa.R.Crim.P. 307 the omnibus pretrial motion must be made within 30 days after the arraignment. This, of course, would also include a complaint of this nature. We are therefore satisfied that the allowance of a writ of habeas corpus for this purpose will not create an additional delay in the trial procedure.

relief, it must be remembered that the rules of appealability are not reciprocal in this area. While the *Commonwealth* may appeal from an order *discharging* a defendant upon a writ of habeas corpus, *Commonwealth ex rel. Bryant v. Hendrick*, 444 Pa. 83, 280 A.2d 110 (1971); *Doyle v. Commonwealth ex rel. Davis*, 107 Pa. 20 (1884), it is equally well settled that the *defendant* may not immediately appeal from the *denial* of his pretrial application for habeas corpus relief. *Commonwealth v. Myers*, 457 Pa. 317, 322 A.2d 131 (1974); *Commonwealth ex rel. Gordy v. Lyons*, 434 Pa. 165, 252 A.2d 197 (1969); *Commonwealth ex rel. Bittner v. Price*, 428 Pa. 5, 235 A.2d 357 (1967); *Commonwealth ex rel. Fisher v. Stitzel*, 418 Pa. 356, 211 A.2d 457 (1965); *Commonwealth ex rel. Tiller v. Dye*, 177 Pa.Super. 388, 110 A.2d 748 (1955).

■ Although it has been deemed appropriate to permit immediate review by the court of common pleas of the finding of a prima facie case by the district magistrate, a balancing of the further disruption of the trial process against the harm to the accused weighs in favor of barring immediate appellate review unless "exceptional circumstances" are present. *See Commonwealth ex rel. Riggins v. Superintendent of Phila. Prisons*, 438 Pa. 160, 263 A.2d 754 (1970); *Commonwealth ex rel. Boatwright v. Hendrick*, 436 Pa. 336, 260 A.2d 763 (1969); *Commonwealth v. Lindsley*, 241 Pa.Super. 522, 524, 366 A.2d 310 (1976). Thus, under prior case law it is firmly established that the denial of a habeas corpus claim, based upon the insufficiency of the evidence presented to the issuing authority, without a showing of exceptional circumstances (which have not been argued here), will not provide a basis for immediate appellate review.

Moreover, we are satisfied that there is no compelling reason to depart from this rule. In the unlikely event, the district justice and the court of common pleas having the habeas corpus application, were both in error in their assessment of the Commonwealth's evidence against the accused, the trial would not proceed beyond the demurrer stage. If a legitimate question is raised as to the existence of a prima facie case, and the common pleas court has a reservation as

to the propriety of its ruling, that court has the alternative of certifying the question pursuant to 42 Pa.C.S.A. § 702(b).[5] If in fact it is determined at trial that the evidence of the Commonwealth is sufficient to be submitted to the jury, then any deficiency in the presentation before the district justice would have been harmless. Finally, if the deficiency at the preliminary hearing stage can be shown to have tainted the verdict, in that event the direct appeal would provide an adequate remedy.[6] Thus, after weighing the slight possibility that the accused might unnecessarily have been required to proceed with trial up to the demurrer stage against the very real delay problem that would be created if we were to provide immediate appellate review, our present rule is justified and compels us to decline any invitation to change it. Accordingly, the motion to quash the appeal is granted, and the cause is remanded for trial.

MANDERINO, J., did not participate in the decision of this case.

ROBERTS, J., filed a concurring opinion in which LARSEN, J., joined.

ROBERTS, Justice, concurring.

I agree with the majority that appellant's appeal must be quashed. I do so, however, for reasons different from those of the majority. It is well-settled that after an indictment or information is issued, a defendant may not invalidate such indictment or information on the basis of a defect in a prior preliminary proceeding. See *Albrecht v. United States*, 273 U.S. 1, 5, 47 S.Ct. 250, 251, 71 L.Ed. 505 (1927) (Brandeis, J.) ("As the affidavits on which the warrant issued had not been properly verified, the arrest was in violation of the clause in the Fourth Amendment . . . . . But it does not follow that, because the arrest was illegal, the information was or became void."); see also *United*

---

**5.** In the present case, the court of common pleas refused to certify the matter for appeal under the predecessor to 42 Pa.C.S.A. § 702(b).

**6.** *See, e. g., Commonwealth v. Loar*, 264 Pa.Super. 398, 399 A.2d 1110, allocatur denied (1979), reconsideration denied (1980).

*States v. Hughes,* 311 F.2d 845 (3rd Cir. 1962); 8 Moore's Federal Practice para. 4.02. Once a court acquires jurisdiction over the defendant by reason of indictment or information, any challenge to the validity of prior assertions of jurisdiction, as in a preliminary hearing, is moot. See *Commonwealth v. Krall,* 452 Pa. 215, 219, 304 A.2d 488, 490 (1973). Accordingly, I would grant the Commonwealth's motion to quash appellant's appeal from the trial court's denial of appellant's pre-trial motions.

LARSEN, J., joins in this concurring opinion.